IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| JAY ANTHONY NOTTINGHAM, | § | |
| PLAINTIFF, | § | |
| v. | § | CIVIL ACTION CAUSE NUMBER |
| WHEELER COUNTY, TEXAS, JOEL FINSTERWALD, SHERIFF, *et al.*, | § | 2:09-CV-250-J |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is civil rights case wherein Plaintiff Nottingham alleges the Defendants used excessive force during his arrest and thereafter denied him medical care. At the time of the incidents at issue, Plaintiff was a pre-trial detainee arrested by peace officers from the Wheeler County Sheriff's Office on a felony arrest warrant. Defendants move for summary judgment upon both of Plaintiff's claims. For the following reasons, Defendants' motions are granted.

### Summary Judgment Standards

The Court may terminate litigation by rendering a summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)(initial burden is on movant to show entitlement to summary judgment with competent evidence). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law governing the case will identify which facts are material. *Id.*, 477 U.S. at 249, 106 S.Ct. at 2510. The party opposing judgment must point the Court to "specific facts with sufficient particularity to meet

all the elements necessary to lay a foundation for recovery, including those necessary to negate the defense" offered by movant. *Brown v. Texas A&M University,* 804 F.2d 327, 333 (5th Cir. 1986)./[1]

"Summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). This Court must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *Id.; Bienkowski v. American Airlines,* 851 F.2d 1503, 1504 (5th Cir. 1988). If a rational trier of fact based upon the record as a whole could not find for the non-moving party, there is no genuine issue for trial. *Amoco Prod. Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 147-48 (5th Cir. 1992). Such a finding may be supported by the absence of evidence necessary to establish an essential element of the non-moving party's case. *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322, 106 S.Ct. 82, 121 L.Ed.2d 265 (1986).

"Finally, where the non-moving party has presented evidence to support the essential elements of its claims but that evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-50, 106 S.Ct. at 2510-11 (citations omitted). Legal conclusions and general allegations do not satisfy this burden. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Lechuga v. Southern Pacific Transp. Co.,* 949 F.2d 790, 798 (5th Cir. 1992)(conclusory statements in affidavits do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985)(party affidavits setting forth only ultimate or conclusory facts are insufficient to either support or defeat a motion for summary judgment). Affidavits must be based upon personal knowledge, Fed. R. Civ. P. 56(e)(1), and to be competent summary judgment evidence can not affirmatively state that it is only based on "information and

---

[1] *Accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp.,* 477 U.S. at 323-25, 106 S.Ct. at 2553. The nonmoving party must designate specific facts showing there exists a genuine issue of material fact on those elements sought to be negated by the movant. *Ibid.*

2

belief" instead of personal knowledge. *See Bolen v. Dengel,* 340 F.3d 300, 313 (5th Cir. 2003) ("Because Dengel's affidavit is expressly based merely on information and belief, it is struck as not based on personal knowledge and therefore fails the requirements of summary judgment evidence."). The bare allegations of the pleadings will not suffice. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## Factual Background

Plaintiff Jay Nottingham complains that on October 6, 2007, while Defendants were seeking to serve a felony arrest warrant on Nottingham, he went into hiding in a "crawl space" located under a home. Defendants searched the home twice, and shortly after 5:30 p.m. that day discovered the access point to the crawl space. Despite multiple attempts, Defendants were unable to place Plaintiff into custody while he was hiding in the space, and Plaintiff refused to come out voluntarily. At some point, Defendants proceeded to attempt to use less than lethal munitions (a 12-gauge shotgun loaded with a bean bag round) to disable the Plaintiff or force him out from under the house. However, the Plaintiff was able to take the loaded shotgun away from the Defendants, and to retain possession of the shotgun. Numerous uses of pepper spray, tear gas, concussion grenades (flash-bangs), and warning shots from pistols were unsuccessful in inducing Plaintiff to surrender either himself or the shotgun. A Texas Ranger, the Randall County S.W.A.T. team, the Pampa Police Department SRT team, a Texas DPS Trooper, the Wheeler County Sheriff, and numerous Wheeler County deputies were actively involved in the standoff. Only Wheeler County deputies have been sued.

Surrender negotiations were conducted between Plaintiff Nottingham, the Defendants, and other police personnel over a period of approximately 13 hours. Early the next day, on the morning of October 7, Plaintiff stated that he would come out from under the house. Defendants allege that Nottingham was carrying the shotgun and aiming it at officers when he exited the crawl space; Plaintiff denies that he aimed the shotgun but admits that he did exit with the shotgun in his hands. Plaintiff was tasered, then jumped upon and handcuffed. Plaintiff alleges after he was restrained the Defendants caused Plaintiff to be struck in the face, neck and body. Plaintiff alleges that he was

3

physically injured as a result of a use of force that was excessive because it was objectively unreasonable in light of any need for use of force under the circumstances.

Gray County Constable Chris Lockridge is the person who used the taser. He is not a defendant in this case.

Nottingham was transported by ambulance to Parkview Hospital in Wheeler, Texas. He was seen by a doctor there and treated for a two cm cut on his neck, which required six sutures, and soft tissue bruises to his left wrist and hand. X-rays of his left hand and wrist, spine, skull, ribs and chest revealed no fractures. Plaintiff had superficial abrasions to his face. His ears, nose and throat were unharmed. He had black eyes. After receiving medical treatment at the hospital, Plaintiff was booked into the Wheeler County Jail at 11:50 a.m. on October 7, 2007. Plaintiff was released from the Wheeler County Jail the next day, on October 8 at 3:00 p.m., to Randall County law enforcement officers, who transported him to Randall County on the felony arrest warrant.

## Discussion and Analysis

Plaintiff specifically states that he does not allege that medical treatment was "substandard or negligently provided." He alleges, first, that *no* medical treatment was provided. That is clearly unsupported by Plaintiff's own pleadings, which admit that he was taken to the hospital by ambulance immediately after the standoff ended and was treated there by an emergency room physician for a small cut and soft tissue bruises on his left wrist and hand. Plaintiff's exhibit B, which has not been properly authenticated, clearly states that his ears, throat and nose areas were unremarkable and he had only superficial abrasions to his face. This evidence does not support his contention that he was struck in the face, neck and body by the police upon his exit from the crawl space.

Plaintiff next alleges that after he was taken to the hospital and provided treatment there, Defendant Carrie Gaines, the jailer, did not follow up on the emergency room physician's recommendations for treatment. However, Plaintiff does not provide competent summary judgment evidence that shows that he had a medical condition that was sufficiently serious that he needed further treatment between the time he was placed in the county jail until the next afternoon when he

4

was released to Randall County's custody. He has not provided any expert report detailing medical treatment he seriously needed and did not receive, explaining why that need was immediate and serious, or how the alleged delay proximately caused him injury. His summary judgment response does not explain why a specific medical test or treatment, if any, should have been given or that any county jailer even knew of that treatment need. Inadequate treatment of an injury does not constitute cruel and unusual punishment in violation of a detainee's civil rights. *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976),

Plaintiff points to no evidence that Wheeler County or the Wheeler County Sheriff's Office had a policy, official or unofficial, of being deliberately indifferent to his or any other detainees' medical needs, either known or unknown. His summary judgment response does not explain how Defendant Gaines is or can be liable for an alleged lack of medical treatment, given that it is undisputed that she was not a policy maker or the final policy maker for the Wheeler County Sheriff's Office or the county jail. He provides no evidence of a county policy of jailers intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed for him. "Congress did not intend [governmental entities] to be held liable [for § 1983 actions] unless action pursuant to official ... policy of some nature caused a constitutional tort." *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)./²

Plaintiff's claim can only succeed if the Plaintiff has pled and provides evidence that officials were deliberately indifferent to his serious medical needs. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)(citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Id.* at 1062 (citing 429 U.S. 105-106, 97 S.Ct. at 291-92).

---

² A governmental entity "cannot be made liable by application of the doctrine of *respondeat superior*." *Pembuar v. City of Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986). "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." *Id.*, 475 U.S. at 480, 106 S.Ct. at 1298.

5

*See also, Farmer v. Brennan*, 511 U.S. 825, 838-40, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994)("subjective recklessness as used in the criminal law" is the appropriate test for deliberate indifference). A subjective belief that jail officials should have done more is insufficient. Plaintiff Nottingham has not provided competent summary judgment evidence that any Defendant was deliberately or recklessly indifferent to his serious medical needs.

For all of these reasons, summary judgment is granted to Defendants Gaines and Finsterwald and to Wheeler County on the denial of medical care claim.

Turning to his excessive force claim, Plaintiff does not allege that his injuries were caused by being tasered. He alleges they were caused by the excessive force used to restrain him after he was tasered upon exiting the crawl space. He denies that he had the shotgun in his hand when he was tasered, but admits to taking the loaded 12-gauge shotgun away from one of the deputies and having it when he exited. Nottingham denies Defendants' affidavits insofar as they state that he repeatedly told the Defendant that he had a pistol, that he also had 12 gauge shotgun shells with him in the crawl space, and that police would have to kill him because he was never going to go back to prison. He denies the fact that police officers saw him armed with a stick with a nail in it. He admits he had a flashlight. Plaintiff alleges that there is no evidence that he posed any type of an immediate threat to the safety of the officers or others *after* he had been tasered. He therefore alleges that under these circumstances that Defendants' use of force was unreasonable, and that they are not entitled to qualified immunity.

Plaintiff denies the fact that he was armed with weapons other than the shotgun. While Plaintiff denies that he was aiming the shotgun upon exiting, as set forth in the numerous filed affidavits from the officers at the scene, his response is carefully vague on other factual issues. For example, he states that he does not recall telling Defendants that he was not going to be taken without a fight or that they would have to kill him. Plaintiff does not explain why he should not have been considered dangerous upon his exit from the crawl space even though he admitted had the shotgun

in his hands upon exiting. His brief does not address why the officers should not have reasonably considered him to have been dangerous under the circumstances./³

Plaintiff filed his civil rights lawsuit against the individual Defendants in their official and individual capacities. Defendants assert their right to qualified immunity. Qualified immunity "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *See Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001); *see also Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004)(*en banc*)(discussing the important goals served by the qualified immunity doctrine). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*)(*per curiam*).

Qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). More precisely, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Fifth Circuit has held, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)(internal quotation and citation omitted).

To prevail on an excessive force claim, a plaintiff must establish: 1) an injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Even

---

³ Plaintiff was armed and under the influence of benzodiazepines and opiates at the time.

if Plaintiff did not, as he claims, arise out of the crawl space with the loaded shotgun in hand, aiming it at the officers, Nottingham has not come forward with competent summary judgment evidence that the actions of the Defendants under the circumstances of this case violate clearly established statutory or constitutional rights of which a reasonable officer would have known. After he was tasered, the shotgun had to be immediately secured and he had to be restrained and placed in handcuffs, which he does *not* allege he was willing to do peacefully. Given the circumstances present at the time, where Plaintiff admittedly was armed with a 12-gauge shotgun, the contours of the right allegedly violated were not sufficiently clear that reasonable officials in the same circumstances would understand that in forcibly restraining Plaintiff they violated his right to be free from a use of force which resulted – assuming the facts true as alleged by the Plaintiff – in a two-centimeter nonsubcutaneous cut on the right side of his neck, superficial facial scrapes and abrasions, a bruised and swollen left eye, and soft tissue bruises on his left hand and wrist, in light of the legal standards existing on October 6, 7 and 8 of 2007.

Given the admitted fact that he was armed with the shotgun upon his exit, and possibly other weapons, significant use of force was legally permissible. Upon his exit from the crawl space, the Defendants had only seconds to decide how much force they needed to utilize. There is no competent summary judgment evidence that Plaintiff suffered an injury that resulted *directly* and *only* from a use of force that was clearly excessive. All of his injuries could have been self-inflicted as he admittedly crawled around under the floor of the home. They could have been inflicted when he struggled with officers under the house (which he does not deny doing). They could have been inflicted when he admittedly struggled mightily with two officers in that confined space over control of the shotgun. Indeed, it is hard to imagine that he did not suffer some of his noted injuries during the 22 plus hours he was under the house – and Plaintiff does not claim that he did not.

Given the lack of evidence that he suffered any injury resulting directly and only from a use of force that was clearly excessive, under the totality of the circumstances in this case Plaintiff has not carried his burden to demonstrate the inapplicability of the defense of qualified immunity to

8

which the officers are entitled. He has not shown that he was injured by the unlawfulness of Defendants' actions at relevant points in time. He does not respond to Defendants Stokes, Burrell and Torrez' statements that they never struck, hit, or kicked the Plaintiff in any manner during the times alleged in the Plaintiff's complaint. His affidavit is completely silent on *which* officers secured him, placed handcuffs on him, and allegedly beat him. He has not produced any evidence that any of the Defendants sued in this case struck, hit, or kicked the Plaintiff in any manner during the times alleged in the Plaintiff's complaint. He does not dispute the fact that Defendant Finsterwald was not in the room when he exited the crawl space. He does not dispute the fact that it was DPS Trooper Arnold who hit him with a baton while Nottingham was in the crawl space struggling to gain control of the shotgun. He does not deny that Sheriff Finsterwald hit him with his pistol hard enough to stun him when they were struggling inside the crawl space, a use of force about which he does not complain or sue. Individually-sued Defendants Finsterwald, Torrez, Burrell, and Stokes are therefore entitled to qualified immunity in this suit.

Without liability for its employees' actions, Defendant Wheeler County can not be held liable in this case. Plaintiff has produced no competent summary judgment evidence reflecting or evidencing an official or unofficial policy encouraging, authorizing or otherwise permitting the use of excessive force by Wheeler County, its Sheriff, or the deputies.

## Conclusions

For all of the above-stated reasons, summary judgment is granted to all Defendants on all claims asserted herein by Plaintiff Nottingham.

Final judgment will be entered in accordance with this memorandum opinion and order.

It is SO ORDERED.

Signed this the ___7th___ day of January, 2011.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE